JAMES T. DUNCAN, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Duncan v. Commissioner
Docket No. 5671-78.
United States Tax Court
T.C. Memo 1979-517; 1979 Tax Ct. Memo LEXIS 9; 39 T.C.M. (CCH) 786; T.C.M. (RIA) 79517; December 27, 1979, Filed *9 Petitioner allocated part of the proceeds from his sale of pipe to "goodwill". Before this Court petitioner attempted to apply the so-called "capitalization" method for valuing goodwill by showing that he had a pipe rental business and that this business generated excess income attributable to goodwill. A necessary ingredient of petitioner's theory was that the pipe had a fair market value less than its sale price. Held, petitioner failed to establish that the pipe had a fair market value of less than what he received for it. Thus this Court cannot conclude that petitioner received any amount in respect of goodwill. Frank J. Cicone, for the petitioner. John W. Harris, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: By letter dated March 1, 1978 respondent determined a deficiency in income taxes paid by petitioner for his taxable year ended December 31, 1975 in the amount of $32,492. The only issue before us is whether petitioner sold any goodwill when his interest in a pipe rental business was sold. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts *10 and exhibits attached thereto are incorporated herein by this reference. Petitioner James T. Duncan, Jr. filed a timely cash basis income tax return for his taxable year ended December 31, 1975 with the District Director of the Internal Revenue Service at Fresno, California. At the time he filed his petition herein petitioner maintained his legal residence in Bakersfield, California. During 1967, and through at least early February of 1969, petitioner was a commission agent representing Drilco Oil Tools Co. (Drilco) in the sale and rental of Hevi-Wate pipe. "Hevi-Wate" is a trade name for weighted drill pipe used in specialty drilling to reduce "fishing" ("fishing" is when tools are "lost in the hole" due to drill failure). Petitioner was a successful representative of Drilco in California. Between February of 1966 and the end of 1969 petitioner, as Drilco's exclusive agent in California, increased sales of Drilco products in California from zero to $600,000 per year. Sometime in early 1969 Drilco offered to sell its entire inventory of Hevi-Wate pipe in California to petitioner. While petitioner was interested in this offer he lacked sufficient capital to make the purchase *11 alone. He, therefore, approached one R.E. Frasch (Frasch) with a proposal that the two purchase Drilco's Hevi-Wate pipe inventory jointly. At this time, Frasch was the sole shareholder and operator of Frasch Equipment Corporation doing business as Apex Equipment Co. (Apex). Apex was in the business of renting oil and drilling supplies. In response to petitioner's offer Frasch and petitioner entered into an oral agreement wherein Frasch (operating through Apex) and petitioner each acquired a 50 percent ownership interest in the inventory of Hevi-Wate pipe joints offered by Drilco. By the terms of this agreement Apex was commissioned to rent, service, maintain and invoice the rental of this inventory under Apex's normal procedures. Petitioner and Apex also agreed that each would pay one-half of the expenses in connection with such rental business and each would receive one-half of the gross income from such business. Shortly after entering into this agreement with petitioner, Frasch assigned 10 percent of his one-half interest in the pipe to one of his employees, T.M. Griffith (Griffith). Thereafter, Griffith owned 5 percent of the entire Hevi-Wate pipe inventory and was allocated *12 5 percent of the income and expenses attributable to this pipe. On February 19, 1969 petitioner, Apex, and Griffith jointly purchased the Hevi-Wate pipe from Drilco. When the parties bought the pipe some of it was already installed and in operation. Subsequent to February 19, 1969, and for sometime thereafter, petitioner received calls from customers wanting Hevi-Wate pipe. Petitioner turned all these calls over to Apex which then handled the transactions. As a result petitioner, over time, received fewer and fewer calls as his customers switched over to Apex. Frasch had a good reputation for service. Sometime subsequent to the time Frasch and petitioner entered into their oral agreement, Frasch approached petitioner to inquire how petitioner would react to Frasch selling Apex. Petitioner agreed that he would not "muddy up the water", i.e. that he would pose no objection to such a sale--which by inference would include a sale by Frasch of petitioner's 50 percent interest in the Hevi-Wate pipe inventory. Subsequently, on September 4, 1975, Frasch sold his entire interest in Frasch Equipment Corporation, along with his other companies, to the Rucker Company (Rucker). In September *13 of 1975 Apex, through Frasch, paid petitioner $102,000 for his 50 percent interest in the Hevi-Wate pipe. Petitioner took no part in the sale negotiations leading to Rucker's purchase of Apex and was unaware of any of the conditions or terms of the sale. Petitioner simply trusted Frasch to get a fair price for his interest in the Hevi-Wate pipe and to pay this amount over to him. In Frasch's agreement with Rucker the parties allocated no part of the purchase price to "goodwill", but allocated $50,000 to a covenant by Frasch not to compete with Rucker. By same token, when Frasch paid $102,000 to petitioner, he was of the opinion that he was merely buying pipe from petitioner and nothing more. Throughout the term of their agreement Apex had held the inventory of Hevi-Wate pipe as part of its rental inventory. When Frasch was calculating how much to pay petitioner for his 50 percent interest in the pipe, he did so by estimating, fro his own experience, the fair market value of the total inventory of Hevi-Wate pipe held by Apex. Frasch concluded that the total value of the entire inventory of Hevi-Wate pipe held jointly by Apex and petitioner was $204,000. Frasch, therefore, *14 paid petitioner $102,000. Petitioner allocated $63,750 of this amount to the sale of "goodwill" and reported it as capital gain. This eliminated the ordinary recapture income petitioner would have had on the sale of his interest in the pipe and, indeed, produced a loss on the sale. Petitioner attached four schedule C's to his income tax return for his taxable year in issue, i.e. one for each of four businesses: Duncan Equipment Company, Jim Duncan Oil Field Rentals (Rentals), Oil Fields Specialities, and Gas Lift Specialities. Petitioner reflected his gross receipts from Apex's rental of the Hevi-Wate pipe on Rentals' books and reported this income on Rentals' schedule C. Rentals showed gross receipts of $130,164 in 1975. The original cost of the Hevi-Wate pipes held by petitioner and Frasch and sold to Ruckers was $145,076. At the time of its sale to Rucker this pipe had an adjusted basis of $72,389. OPINION The only issue for our decision is whether petitioner correctly allocated $63,750 of the $102,000 he received from Frasch to "goodwill." Petitioner argues that his participation with Apex in the rental of Hevi-Wate pipe was a separate business he carried on under *15 the name Oil Field Rentals. Petitioner points to the acceptance by respondent of his use of separate schedule C's to report his income and expenses from these rentals as support for his claim. Petitioner also argues that Oil Field Rentals was merely the extension of a separate business he had carried on before he and Freasch (and Griffith) had purchased the pipe. Finally he argues that the existence of goodwill attaching to his rental business is proven by the high earnings this business enjoyed, i.e. earnings far in excess of the normal return to be expected at the time from the use of capital. Respondent argues, on the other hand, that petitioner sold, not a going business, but merely his interest in a stock of pipe. He points to Frasch's testimony that, when he (Frasch) paid $102,000 to petitioner, he intended only to buy pipe and not goodwill. Respondent also relies upon the fact that it was Frasch who determined the amount to be paid to petitioner and that Frasch did so only with reference to the value of petitioner's interest in the Hevi-Wate pipe, and nothing more. Finally, respondent argues that, in the absence of any other evidence with respect to the fair market value *16 of the pipe as of its sale date, the value for which the pipe was actually sold by petitioner to Frasch is the most reliable indicia of the pipe's true fair market value. The burden, of course, is upon petitioner to prove his case. Welch v. Helvering, 290 U.S. 111 (1933). Rule 142, Tax Court Rules of Practice and Procedure. While some evidence of the existence of some amount of goodwill attaching to petitioner's business of renting pipe was presented, we are compelled to find that petitioner has failed to carry his burden herein. In attempting to establish a value for the goodwill he claimed his business possessed, petitioner relied upon the capitalization method of valuing goodwill described in Rev. Rul. 68-609, 1968-2 C.B. 327. But the key to the application of that theory is the establishment of a fair market value for the tangible assets of the business sold, i.e. here the pipe. Once this base figure is established, a determination can be made, under respondent's ruling, of whether earnings are in excess of the usual return on capital which is symptomatic of the existence of goodwill. While petitioner on brief attributes a $75,000 value to the *17 pipe itself, he produced no evidence upon which this Court could base a finding that the pipe's fair market value as of its sale date was in fact that amount. Petitioner was attempting to establish a value for the pipe sold of less than $102,000 with a view to allocating a portion of that amount paid to goodwill. It was incumbent upon him to adduce some evidence on that point, but the record is devoid of any such evidence. Thus, even respondent's Ruling is of no help to him.
In the absence of any evidence from petitioner on this crucial point, the only evidence available to this Court with respect to the pipe's value as of its sale date is the price actually paid by Frasch to petitioner for the pipe. Given Frasch's apparent expertise in the oil field equipment rental business and petitioner's obvious total trust and faith in his honesty, Fraschhs conclusion that petitioner's interest in the pipe alone was worth $102,000 seems a sound one. We find that petitioner received $102,000 solely in respect of his interest in the Hevi-Wate pipe inventory and that he received nothing in respect of goodwill. Decision will be entered for the respondent.